# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### SHREVEPORT DIVISION

| | |
|---|---|
| GEORGE RICHARD MILLS MARGUERITE CARSON MILLS | CIVIL ACTION NO. 12-cv-3060 |
| VERSUS | JUDGE ELIZABETH ERNY FOOTE |
| CHESAPEAKE OPERATING, INC. | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM RULING

Two motions are pending before this Court. George Richard Mills and Marguerite Carson Mills ("Plaintiffs") have filed a Motion for Partial Summary Judgment, seeking recovery of unpaid rent, court costs, and attorneys' fees. [Record Document 14]. Defendant, Chesapeake Operating, Inc. ("Chesapeake"), has filed a Motion for Summary Judgment, seeking dismissal of all Plaintiffs' claims against it with prejudice at Plaintiffs' cost. [Record Document 15]. This controversy arises out of a contract entitled "Limited Access Road Grant" (the "Grant") executed by the Plaintiffs and Chesapeake that gave Chesapeake the right to use an access road for an initial term and subsequent periods in exchange for monthly fees. The Grant specifically gave Chesapeake the right to terminate the agreement and its obligations by properly recording a release of the Grant in the public records. Chesapeake paid the monthly fees until it ceased using the road, but never recorded the release until after suit was filed. The Plaintiffs, who admit Chesapeake ceased using the roadway on April 16, 2012, contend that the Grant obligated Chesapeake to continue making payments after it ceased using the roadway and up until it filed the release on January 22, 2013. For

the reasons given below, the Court holds that the unambiguous terms of the contract require that Chesapeake pay the Plaintiff until it properly recorded the required release. Therefore, the Court **GRANTS** the Plaintiffs' Motion for Partial Summary Judgment [Record Document 14] and **DENIES** Chesapeake's Motion for Summary Judgment [Record Document 15].

## I.      FACTUAL AND PROCEDURAL BACKGROUND

On June 20, 2011, Plaintiffs executed the Grant that permitted Chesapeake to utilize a single thirty foot (30') private well access road on their property in Bossier Parish, Louisiana, subject to the terms, conditions, and obligations, except where expressly modified, of a prior grant between the Plaintiffs and Petro-Chem Operating Co., Inc. ("Petro-Chem Grant") over the same road and route. [Record Document 14, p. 2, 14-3, p. 2, and 14-4, p. 1]. The Grant from Plaintiffs to Chesapeake was never recorded in the public records of Bossier Parish, but the Petro-Chem Grant had been recorded. [Record Document 15-8, p. 1 and 18-1, p. 1]. The first phase of the Grant extended rights to Chesapeake for a six month period lasting from June 17, 2011 to December 16, 2011 ("initial term"). [Record Document 14-4, p. 1]. Paragraph three of the Grant provided that if Chesapeake exercised its rights under the Grant beyond the initial term, it would be required to make "advance payments for each month or partial month of additional use" in accordance with the following schedule:

A.      Month seven (7) December 17, 2011-January 16, 2012, <amount

redacted>[1];

B.   Month eight (8) January 17, 2012-February 15, 2012 <amount redacted>;

C.   Month nine (9) February 17, 2012-March 16, 2012 <amount redacted>;

D.   Month ten (10) March 17, 2012-April 16, 2012, and for each month/partial month thereafter, <amount redacted>.

[Record Document 14-4, pp. 1-2].

 Beyond the initial term, Chesapeake used the road for months seven, eight, nine, and ten. [Record Document 15-1, p. 2]. In each instance, it mailed letters to the Plaintiffs that informed them it would continue using the road and tendered the appropriate payment. Id. Chesapeake stopped using the road sometime around April 16, 2012. [Record Document 18-1, p. 2]. Thereafter, no Chesapeake personnel or contractors, who were told by Chesapeake to use a new access road, entered the Plaintiffs' road or even possessed the access code to open the gate, which was marked (presumably by Defendant) with a "NO CHK Oilfield Traffic" sign. [Record Document 15-1, p. 3].

The Plaintiffs, by a letter dated August 20, 2012, demanded payment for the period after April 16, 2012. [Record Document 1-1, p. 3]. The letter claimed Chesapeake had continued using the Grant and demanded that Chesapeake make the

---

[1] Chesapeake alleged in its motion for removal that the amount in controversy exceeds the jurisdictional requirement of $75,000. [Record Document 1, p. 2]. The Court presumes that the amount in controversy is sufficient for purposes of diversity jurisdiction but cannot verify same in that the monthly payment amounts were redacted from the copy of the Grant provided to the Court. The Plaintiffs have made no contradictory statements in the record, nor have they sought remand. The Court notes that paragraph seven of the Grant states that payments made pursuant to the Grant would be confidential.

payments due after the March 17, 2012 - April 16, 2012 period. [Record Document 14-4, p. 12]. The letter did not mention Chesapeake's failure to file the required release but warned that the Plaintiffs would sue Chesapeake if they were not paid. Id. Chesapeake, by a letter dated September 19, 2012, responded without making payment. [Record Document 1-1, p. 3]. In a supplemental letter, dated September 20, 2012, the Plaintiffs replied to Chesapeake's response with details regarding the Grant's termination and payment requirements. Id. Once again, Chesapeake responded, refusing to make payments. Id.

On November 20, 2012, the Plaintiffs filed a complaint claiming that Chesapeake owed them payment under the terms of the Grant from April 16, 2012 until such time that Chesapeake recorded its release in the Bossier Parish, Louisiana Conveyance Records and delivered a certified copy to the Plaintiffs. [Record Document 1-1, p. 4]. At the time suit was filed, no such release had been recorded.[2] The Plaintiffs pointed specifically to paragraph six, which states:

> Upon termination of this Limited Access Road Grant, Grantee shall cause a written release of this Grant to be duly recorded in the Bossier Parish, Louisiana, Conveyance Records and a certified copy thereof shall be delivered to Grantor. The monthly payments, as provided in Paragraph 3 above, shall continue until proper recordation of the required release.

[Record Document 14-4, p. 2]. The Plaintiffs also argued that, under the terms of the original grant to Petro-Chem, Chesapeake's failure to make payment after the notice of default obligates it to pay "reasonable costs and attorney's fees incurred by Plaintiffs to

---

[2] Chesapeake did eventually file the release in the Conveyance Records of Bossier Parish on January 22, 2013.

enforce the Grant." [Record Document 14, p. 1].

## II.    MOTIONS BEFORE THE COURT

Because the two motions before the Court are cross motions which address the same legal issues, the Court will address the motions together. The Court will outline first the parties' positions in their motions and will then address the applicable law and arguments of counsel.

### A.    PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiffs, who assert there are no disputed material facts and that they are entitled to judgment as a matter of law, have filed a Motion for Partial Summary Judgment, seeking an award for nine months of rent that accrued from April 17, 2012 until Chesapeake's recordation of the release on January 22, 2013. They also claim they are entitled to costs and attorneys' fees. [Record Document 14, p. 4]. Plaintiffs point to the specific language of paragraph six of the Grant and contend that Chesapeake was obligated to continue to make the payments "until proper recordation of the required release." [Record Document 14, p. 3].

After Plaintiffs' counsel served a notice of demand on Chesapeake, Chesapeake refused either to file a notice of release or to pay rent. [Record Document 14-2, p. 3]. Plaintiffs argue this constitutes a failure to comply with the Grant's payment conditions after notice of default, obligating Chesapeake to pay reasonable costs and attorneys' fees incurred to obtain payment. [Record Document 14, p. 1]. The basis for the claim

5

for attorneys' fees and costs is the following provision of the Petro-Chem Grant,

incorporated by reference into the Chesapeake Grant:

> Should Grantee, or anyone acting under Grantee, fail to comply with the conditions and obligations established hereunder in favor of Grantor and its assigns, within 30 days after receipt of notice by Grantee from Grantor of the default, Grantor shall have the right to enforce immediate performance by Grantee by judicial action, or at Grantor's option, to recover damages from Grantee for the failure of Grantee to so perform, plus all costs and reasonable attorney's fees incurred by Grantor.

[Record Document 14-4, p. 8].

## B.   DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Chesapeake likewise asserts that there are no disputed material facts and has

filed a Motion for Summary Judgment, seeking the dismissal of all Plaintiffs' claims with

prejudice at their cost. [Record Document 15]. Chesapeake asserts two arguments for

why the Court should grant its motion. First, Chesapeake contends that the monthly

payments in the Grant are not rent, but stipulated damages to which the Plaintiffs are

not entitled because they have not suffered **any** damages and therefore cannot satisfy

the threshold requirement for an award of stipulated damages.  Secondly, Chesapeake

argues that because the Grant itself was not recorded, there was no legal necessity to

record the release.

## C.   STANDARD FOR SUMMARY JUDGMENT

A party is entitled to summary judgment when "the movant shows that there is

no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(a). Under Rule 56(c) of the Federal Rules of Civil

6

Procedure, summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2552-53 (1986). Additionally, the issue of whether the contract is ambiguous is a question of law, which this Court may evaluate at the summary judgment phase. See Gebreyesus v. F.C. Schaffer & Assoc., Inc., 204 F.3d 639, 642 (5th Cir. 2000) (applying Louisiana law).

### D.    THE GRANT AS  A VIABLE CONTRACT AND LEASE

No party disputes the validity of the Grant as a binding contract on the parties. Nor, as previously mentioned, does any party dispute any material facts. What is in dispute is the interpretation of the contract. In federal diversity cases, the Court applies the law of the state to substantive claims not governed by the Federal Constitution or acts of Congress. See Erie R. Co. v. Tompkins, 304 U.S. 64, 78, 58 S. Ct. 817, 822 (1938).

The Grant is a contract between the Plaintiffs and Chesapeake. See La. Civ. Code art. 1927 ("A contract is formed by the consent of the parties established through offer and acceptance."). Furthermore, Louisiana Civil Code art. 1983 provides that the agreements made by the parties are contracts that are binding on those parties, in the same way that law is binding on the parties: "Contracts have the effect of law for the parties and may be dissolved only through the consent of the parties or on grounds

7

provided by law."

Under the terms of the Grant, the Plaintiffs provided Chesapeake with exclusive access to a private road for the purpose of ingress and egress to its oil and gas well operations in exchange for Chesapeake's payment of a specified fee for a six month initial term followed by a graduated monthly fee. [Record Document 14-4, p. 1]. The Grant is a lease, which "is a synallagmatic contract by which one party, the lessor, binds himself to give to the other party, the lessee, the use and enjoyment of a thing for a term in exchange for a rent that the lessee binds himself to pay." La. Civ. Code art. 2668. "The essential elements of a lease are the thing, the price (rent), and consent of the parties." S. Treats, Inc. v. Titan Props, L.L.C., 40,873 (La. App. 2 Cir. 4/19/06), 927 So. 2d 677, 683.  Here, this particular contract satisfies the Louisiana Civil Code definition of a lease, and the payments due under this contract bear all of the indicia of rent. The parties formed a contract of lease when they consented to private access to the road (the thing) for a monthly sum (the price) for an initial term and a series of subsequent terms. Notably, the monthly payments are due in advance of the use of the access road, as is the common practice with rent. There is no requirement that a breach occur before these payments are due. On the other hand and as discussed below, stipulated or liquidated  damages by their very nature are not payable until after a breach has occurred.

### E.     WHAT EVENT TERMINATES THE LESSEE'S OBLIGATION TO PAY RENT?

The major dispute between the Plaintiffs and Chesapeake concerns the duration

of the contract, or more specifically, what event terminated the lessee's obligation to pay rent. In this case, the contract itself provided a specific manner by which the lessee's obligation would cease, that is, the public recordation of a release. If an obligation is immediately enforceable but ends when an uncertain event occurs, the condition is resolutory. See La. Civ. Code Ann. art. 1767. The Louisiana Civil Code specifies that these conditions could either be stipulated or implied. See La. Civ. Code art. 1768. ("Conditions may be either expressed in a stipulation or implied by the law, the nature of the contract, or the intent of the parties."). Paragraph six of the Grant explicitly stipulates that the lease will end when Chesapeake files the notice of release in the public record and that Chesapeake must pay rent under the lease until it files the release. Since the Grant was immediately enforceable upon execution but subject to termination when Chesapeake filed a notice of release in the public record, the filing of the release is a resolutory condition. Chesapeake's decision regarding when to record the notice of release determines the duration of the lease.

Chesapeake argues Louisiana law considers an obligation not to do an action, rather than an obligation to do an action, as the only means to fulfill a resolutory condition, which would mean in this case that an affirmative act such as recording a release cannot constitute a resolutory condition. This is not a correct interpretation of Louisiana law. The occurrence of an uncertain event fulfills the resolutory condition. Nothing in the Louisiana Civil Code restricts the uncertain event to a party's non-performance. On the contrary, a resolutory condition can depend entirely on the will of

9

the obligor, provided he, she, or it operates in good faith. <u>See</u> La. Civ. Code art. 1770 ("A resolutory condition that depends solely on the will of the obligor must be fulfilled in good faith."). Such a resolutory condition could even include a decision. <u>E.g</u>, <u>Seals v. Calcasieu Parish Voluntary Council on Aging, Inc.</u>, 1999-1269 (La. App. 3 Cir. 3/1/00), 758 So. 2d 286, 294 (explaining that if the execution of the contract makes the obligation to work immediately enforceable, the decision to terminate employment was an uncertain event that constituted a resolutory condition). Thus, in this Grant, Chesapeake's decision to file a notice of release in the public record is the condition that "resolves" or terminates this lease.

Regardless of whether this Court labels the requirement of recordation as a resolutory condition or not, the fact remains that the contract states that payments will continue until the release is recorded. The fact that the Plaintiffs knew Chesapeake was no longer using the land or that Chesapeake gave notice to the Plaintiffs through its response letters does not satisfy the contract language. Chesapeake asserts that its other affirmative acts (such as providing letters) or non-actions (such as no longer using the access road) fulfill this contract requirement. But this interpretation of the contract requires extrinsic evidence to negate or vary the Grant's unambiguous terms, which Louisiana law generally precludes. <u>See</u> <u>Gebreyesus</u>, 204 F.3d at 643. A court may only rely on extrinsic evidence if the contract is ambiguous, which means "its terms are unclear or susceptible to more than one interpretation, or the intent of the parties cannot be ascertained from the language employed." <u>Id</u>. Notably, Chesapeake does not

argue that the contract language is ambiguous. Paragraph six clearly and explicitly requires Chesapeake to record a release of the Grant to stop its obligation to pay rent and the terms are not susceptible to more than one interpretation, making them unambiguous. As a result, Chesapeake's failure to make payment is a breach of its obligation to pay rent. Chesapeake's signature on the Grant, far from being a "mere ornament," gives rise to the presumption that Chesapeake, as the signatory to the Grant, knew its contents. <u>See</u> <u>S. Treats, Inc.</u>, 927 So. 2d at 684-85. This presumption cannot be defeated with claims the contents were unread, misunderstood, or unexplained. <u>See</u> <u>id</u>.

Additionally, Chesapeake argues that requiring it to make monthly payments until recordation of the release is an absurd consequence when, as here, it never recorded the Grant in the public record. This argument ignores the importance of recordation of the release and the language of paragraph six of the Grant. First, recordation in the public records in the parish in which the property is located is an unambiguous expression to the parties and to the world that the road is either available or unavailable for use. Such an unambiguous expression has independent value to both parties. Furthermore, the Grant identified recordation of the release as the only means of terminating the lease. Since the lease terminates upon the occurrence of a designated event, the lease was for a fixed term. <u>See</u> La. Civ. Code art. 2678 ("It is fixed when the parties agree that the lease will terminate at a designated date or upon the occurrence of a designated event."). Just as a contract existed between the parties

11

when Chesapeake used the access road without recording the Grant, it continued existing when Chesapeake ceased using the access road without recording the release of the Grant. The Grant's fixed term would continue until the designated event, recordation of the release. As the Plaintiffs point out, while Chesapeake did not use the road after April 16, 2012, the Plaintiffs were obligated to make the road available and Chesapeake was obligated to make payment until it recorded a release of the grant. [Record Document 18-1, p. 2]. Requiring Chesapeake to perform its principal obligation for the duration of a contract when it is the only party with the power to satisfy the terminating condition is a reasonable expectation of contract law.

### F.    STIPULATED DAMAGES AND THE ABSENCE OF DAMAGES

Chesapeake's Motion for Summary Judgment construes the Plaintiffs' claims for unpaid rent as a claim for stipulated damages and argues that because the Plaintiffs have failed to describe how they were damaged, such damages are not recoverable. [Record Document 15-1, pp. 4-6]. However, the payments outlined in paragraph three of the Grant do not meet the legal definition of stipulated damages. A stipulated damages provision: (1) is made in advance, that is, the amount of the damages is agreed upon before any breach of the contract; (2) specifies a sum to be recovered in the event of the other party's non-performance or breach; and (3) gives rise to a secondary obligation for purposes of enforcing the principal obligation. See Lombardo v. Deshotel, 94-1172 (La. 11/30/94), 647 So. 2d 1086, 1090.

As discussed above, the payments described in paragraph three bear all of the

indicia of rental payments due under a lease and none of the indicia of stipulated damages. Also as discussed above, the Grant meets the Louisiana Civil Code definition of a lease: the party who owns the property agrees to allow the Defendant to use the property for an initial term that is followed by optional subsequent terms with payments for each term. These payments are due in advance of the use of the property, which is the most common method for payment of rent. On the other hand, stipulated damages are not due until **after** a breach or non-performance has occurred. Stated another way, the Grant's requirement that Chesapeake make the payments in accordance with the agreed terms was a principal obligation, not a sum to be recovered for non-performance or a secondary obligation to enforce the principal one. See La. Civ. Code art. 2683. Since Chesapeake's obligation to pay rent was not a secondary obligation to secure some other performance obligation or to compensate for nonperformance of Chesapeake's principal obligation, the rent due is not a stipulated damages provision but rather the amount Chesapeake agreed to pay for use of the land in the Grant. Thus, in order to recover the rent payments due to them, Plaintiffs have no threshold obligation to demonstrate damages.

### G.    LAWFUL EXCUSE

Chesapeake argues that it had a lawful excuse for not recording a release of the Grant, specifically, that nothing existed in the Bossier Parish records to release. [Record Document 15-1, pp. 6-7]. In short, Chesapeake's legal excuse is that Louisiana law does not require recording the release of a Grant when no grant exists in the public

records. However, a grant need not be recorded for the clerk of court to record its release, a conclusion which is demonstrated by the fact that Chesapeake recorded its release on January 22, 2013 when no grant existed in the public record. The Grant, as a contract, has the effect of law between the Plaintiffs and Chesapeake. See La. Civ. Code art. 1983 ("Contracts have the effect of law for the parties and may be dissolved only through the consent of the parties or on grounds provided by law."). "Parties are free to contract for any object that is lawful, possible, and determined or determinable." La. Civ. Code art. 1971. Nothing indicates that a contract identifying recordation of the release as a terminating condition is unlawful, impossible, or indeterminable. On the contrary, Louisiana public policy precludes courts from interfering in a contract freely and voluntarily executed, as articulated in the following paragraph:

> The policy of the law is that all men of lawful age and competent understanding shall have the utmost liberty of contracting and their contracts, when freely and voluntarily made, are not lightly to be interfered with by the courts. The court is not concerned with the wisdom or folly of the contract. The contract in this respect may be a hard one for the plaintiff, but it is one that the parties were competent to make and had the right to make. It is the law between the parties and the courts have no alternative except to enforce it as written.

Evangeline Parish Sch. Bd. v. Energy Contracting Servs., Inc., 617 So. 2d 1259, 1263 (La. App. 3 Cir. 1993).

Chesapeake cites Wahlder v. Osborne, 417 So. 2d 71 (La. App. 3 Cir. 1982) to argue that it had a valid excuse not to record the release. In Wahlder, the Third Circuit Court of Appeal of Louisiana held the defendant, a gas station lessee, had a legal excuse under Louisiana Civil Code Article 2120 for refusing to pay a contract's penalty

14

provision. Wahlder, 417 So. 2d at 73. There, the plaintiff, a gas station lessor, sought to evict the defendant for not paying a $20 per day penalty for closing the service station on certain Sundays, despite a Presidential proclamation requesting service stations close on Sundays amid the 1979 energy crisis and the need to avoid exhausting a limited gasoline supply. See id. at 72. Wahlder is inapplicable for two reasons. First, Wahlder's interpretation of a "legal excuse" is specific to the context of a penalty provision or stipulated damages clause, which, for the reasons given above, renders it inapplicable here. See id. at 73. Second, the legal excuse in Wahlder was the lessee was faced with the choice of ignoring a presidential proclamation or complying with the lease terms. Here, nothing precluded Chesapeake from filing a notice in the record, and no Presidential proclamation, law, or national crisis provided an excuse. Chesapeake does not argue that performance of the terminating condition was impossible or even difficult, but simply argues that it should never have had to terminate the contract in the agreed upon manner.

## H.   ATTORNEYS' FEES AND COURT COSTS

Chesapeake argues that Plaintiffs are not entitled to attorneys' fees and court costs, because they are not entitled to the specific performance sought. [Record Document 19, pp. 3-4]. This is Chesapeake's sole argument against awarding Plaintiffs attorneys' fees and court costs and it depends entirely on defeating the Plaintiffs' other claims, which are addressed above.

The contract between the Plaintiffs and Petro-Chem, which was adopted by

these parties, provided for the payment of attorneys' fees and costs in the event of

breach and demand. In this case, despite demand, Chesapeake did not record the

release until after suit was filed and has made no additional payments to date. Thus,

under the terms of the contract, Plaintiffs are entitled to an award of attorneys' fees

and costs, in an amount to be determined.

**III.   CONCLUSION**

        For the foregoing reasons,

        **IT IS ORDERED** that the Plaintiffs' Motion for Partial Summary Judgment

[Record Document 14] be and is hereby **GRANTED**, awarding to Plaintiffs the amount

of payments due under the Grant up until the recordation of the release on January 22,

2013, as well as attorneys' fees and costs. Because the amount of lease payments has

been redacted from the contract in the record, this Court is without the means to fix

the dollar amount of an award. This task, as well as setting attorneys' fees and costs, is

reserved for another day.

        **IT IS FURTHER ORDERED** that Chesapeake's Motion for Summary Judgment

[Record Document 15] be and is hereby **DENIED**.

        **THUS DONE AND SIGNED** in Shreveport, Louisiana on this 5th day of

November, 2013.


_____
ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE